**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Derrick HUTCHINSON,
Defendant-Appellant.**

No. 52320.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 11, 1987.

Motion for Rehearing and/or Transfer
Denied Oct. 21, 1987.

Application for Transfer Denied
Dec. 15, 1987.

James S. McKay, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant appeals after being convicted by a jury of five counts of first degree robbery and two counts of armed criminal action. He was found to be a prior offender and was sentenced to a term of imprisonment on Count I of 20 years; Count II, 20 years; Count III, 10 years; Count IV, 20 years; Count V, 20 years; Count VI, 20 years; and Count VII, 10 years. Counts I, II, III, IV and VII are to run consecutively, while Counts V and VI are to run concurrent with each other and concurrent with Counts I, II and IV for a total of eighty years. Defendant appeals. We affirm.

The charged offenses occurred on the evening of October 24, 1985. The first incident, referred to in Counts I, II and III, took place outside the Clarion Hotel in downtown St. Louis at approximately 7:30 p.m., and the second, to which Counts IV, V, VI and VII pertain, occurred at a parking garage in the same area at approximately 8:00 p.m.

On the evening of October 24, 1985, Richard LeGrand and Christine Messina arrived at the Clarion Hotel where they were to meet friends and watch a baseball telecast. Before they entered the building, they were approached by two men, one black, one white, who robbed them at gunpoint of $68 cash and change. Defendant took the victims' money, while the other man held the gun. The men then fled in a southerly direction. Defendant was described by the victims as wearing light-colored pants, a blue jacket and a blue hat with a "Majic 108" logo sewn on it.

At approximately 8:00 p.m., in an elevated parking garage at 6th and Pine Streets, Mark and Susan Parres and Pat Lada were leaving their car when they were approached by two men, one white and one black. The men robbed the Parreses and Mrs. Lada at gunpoint of $231. The white man held the gun, and the black man took the money. They demanded the keys to Mrs. Lada's car, which they used to attempt an escape. Defendant was described by the victims as wearing light-colored pants, a short-sleeved t-shirt and a blue hat with the "Majic 108" logo on it.

Mrs. Lada alerted a police officer on the street below the garage and was relating the event to him when she noticed defendant and his cohort exiting an elevator in the garage. Defendant was apprehended by the police officer; defendant's accomplice ran and was captured a few blocks away by another officer. A routine search revealed that defendant had three bundles of money in his possession in denominations identical to the ones taken from the Parreses and Mrs. Lada. After defendant was taken into custody, the police brought Mr. Parres and Mrs. Lada to the scene where they identified defendant as the man who had taken the money from them. Defendant was later identified at a police lineup by Mr. LeGrand and Ms. Messina as one of the men who had robbed them. Prior to their identification of defendant at the police lineup, the Parreses and Mrs. Lada discussed the incidents with LeGrand and Messina.

Defendant was indicted by a grand jury on seven counts. In Count I he was charged with first degree robbery from Christine Messina; in Count II with first degree robbery from Christine Messina; in Count III with armed criminal action; in Count IV with first degree robbery from Mark Parres; in Count V with first degree robbery from Susan Parres; in Count VI with first degree robbery from Pat Lada; and in Count VII with armed criminal action.

On the morning of the trial, defendant moved to dismiss the indictment or, in the alternative, to dismiss Counts I and II because both alleged a robbery from Christine Messina. He also filed a motion to sever Counts I, II and III from Counts IV, V, VI and VII. The motion to sever was denied and the state requested leave to file a substitute information in lieu of the indictment. The court overruled defendant's motion to dismiss and granted leave to file the substitute information. Count II of the substitute information alleged a robbery from Richard LeGrand; in all other respects the substitute information was the same as the indictment.

■ Defendant first contends that the court erred in allowing the state to amend Count II, by information in lieu of indictment, because the substituted count constituted a new and different offense from that originally charged in the indictment and, therefore, the court was without jurisdiction to try defendant on that offense. We disagree.

Rule 23.08 provides:
any information may be amended or substituted for indictment at any time before verdict or finding if no additional or different offense is charged *and if defendant's substantial rights are not thereby prejudiced.* No such amend-

**186**

ment or substitution shall cause delay of a trial unless the court finds that the defendant needs further time to prepare his defense by reason of such an amendment or substitution.

(Emphasis added.)

Relying on this rule and § 545.290, RSMo 1986, "Missouri cases are to the effect that *even if an essential element is omitted* from the original information, it may be supplied by an amendment if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced." *State v. Jackson,* 604 S.W.2d 832, 835 (Mo.App.1980) (emphasis added).

The sole change effected by the substituted information involved the name of the victim. However, a change in the victim's name by substituted or amended information does not constitute a charge of a different offense in a robbery case. *State v. Sturrs,* 51 S.W.2d 45 (Mo.1932). *See also Dye v. Sacks,* 173 Ohio St. 422, 183 N.E.2d 380 (1962).

Furthermore, defendant does not allege that he was prejudiced by the substitution of LeGrand's name for Messina's. Both LeGrand and Messina were endorsed as witnesses on the indictment, and defendant's counsel deposed Mr. LeGrand prior to trial. When asked if he was surprised when the substitute information was filed, defense counsel stated he was not. Defendant does not claim to have required a different defense because of the substitution and the facts indicate that he was not prejudiced by it. His point is without merit.

■ The defendant next posits error in the trial court's refusal to grant defendant's motion to sever Counts I, II and III, the Clarion Hotel offenses, from Counts IV, V, VI and VII, the parking garage offenses. Severance presupposes proper joinder and is addressed to the discretion of the trial court with regard to whether prejudice may or would result if charges properly joined were tried together. *State v. Southern,* 724 S.W.2d 605, 607 n. 2 (Mo.

App.1986).[1] We find no abuse of discretion on the part of the trial court in failing to sever the offenses, having examined the factors to be considered according to *State v. Duren,* 556 S.W.2d 11 (Mo. banc 1977), *rev'd on other grounds sub nom. Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

The facts in this case were not complex, and the jury faced no great obstacle in distinguishing and sorting the evidence on each charge. We discern nothing in the record which would cause us to conclude that the jury could not apply the law intelligently to each of the offenses charged. *State v. Sanders,* 714 S.W.2d 578 (Mo.App. 1986). There was no prejudice to defendant from the court's denial of severance, and defendant's point is without merit.

■ Defendant next challenges the legitimacy of the pretrial identification procedures. As to the identifications by the Parreses and Mrs. Lada, he claims that the show-up identification, made while defendant was in custody, was unduly suggestive and, second, that prior to the lineup identification at the police station, LeGrand and Messina "compared notes" with the other victims, which influenced their identifications.

We note that all five witnesses made positive in-court identifications. The principle relevant to the admissibility of identification testimony is stated in *State v. Toney,* 680 S.W.2d 268, 275–76 (Mo.App.1984):

Thus, in considering the out-of-court identifications, a two-step analysis is required. *State v. Higgins,* 592 S.W.2d 151, 159 (Mo.1979). First, the police procedures are to be considered to determine if they are impermissibly suggestive. Second, if they are found to be impermissibly suggestive, then the inquiry turns to the reliability of the in-court identification. In determining reliability, the court looks at the "totality of the circumstances" including:

*State v. Southern,* 724 S.W.2d 605 (Mo.App. 1986).

---

1. Defendant does not challenge the propriety of the initial joinder of the offenses, and we believe joinder was proper under Rule 23.05. *See*

(1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*State v. Sanders,* 621 S.W.2d 386, 389[1, 2] (Mo.App.1981).

While a lineup containing several individuals is preferable "it is ... well settled in Missouri that 'it is not improper for the police to immediately return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before.'" *Simmons v. State,* 568 S.W.2d 801 (Mo.App. 1978). That is what occurred here.

■ Furthermore, considering the totality of the circumstances, the discussions of the various victims prior to the lineup did not undermine the reliability of the identifications to such an extent as to render the evidence inadmissible. First, due to the nature of the crimes, all of the witnesses were virtually face-to-face with defendant and had an opportunity to obtain a clear view of him at the time of the crimes. Although the witnesses' descriptions varied in several respects, the descriptions were generally accurate. Additionally, upon confrontation, all the witnesses, except one, demonstrated a high level of certainty that defendant was one of the men who robbed them. Finally, the length of time between the crime and the confrontations was very short, which further strengthens the credibility of the identifications. Defendant's point is without merit.

■ Defendant's final challenge is to the trial court's refusal to strike venireperson Myrtle Bird for cause. Defendant claims that Ms. Bird could not have been a fair and impartial juror because of her experience as a robbery victim four years earlier.

Although the transcript does not contain the entire voir dire examination, it appears Ms. Bird initially stated that she did not think she could be fair during the trial because of her experience as a robbery victim. She was interrogated further by the prosecutor, by counsel for the defendant and by the court on this issue.

The prosecutor asked Ms. Bird "if she could put it aside and decide this case not by what happened to you but by what happened to those five individuals who will come in here and tell you what happened." She responded, "possibly." She said "it was possible it would enter into her decision" and that "she didn't know if she could separate them." The prosecutor then explained that although the court did not expect Ms. Bird to forget what had happened in the past, she must not consider what had happened to her as evidence in the present case. Ms. Bird stated that she understood. She said that she could follow the instructions given to her, and that if the state did not prove defendant's guilt beyond a reasonable doubt, she would not find him guilty. She also stated, during further questioning by defense counsel, "[I]t wouldn't influence me, it is not that I wouldn't—maybe thoughts might come back to me about it, but it wouldn't influence me on this particular case." The court then asked: "Do you think it might color the way you view the evidence or influence the way you view the evidence in this case?" Ms. Bird's response was, "I don't believe so." The court then denied defendant's objection to the prospective juror.

We believe the issue raised by defendant is resolved by the recent Missouri Supreme Court decision in *State v. Johnson,* 722 S.W.2d 62 (Mo. banc 1986). In that case, a venirewoman was questioned during voir dire in a rape case. She was asked if the fact that she was a woman would affect her impartiality in deciding the guilt or innocence of the accused. Her initial response was "I would probably decide more with the woman in this situation." Ultimately, after extensive interrogation, she said that she could set aside her personal feelings and follow the law. The court overruled the objection to the prospective

juror. In affirming the trial court, the supreme court stated,

> ... we are mindful of the trial court's wide discretion in determining the qualifications of a prospective juror and its ruling will be disturbed on appeal only when clearly against the evidence and it constitutes an abuse of discretion ... Each case must be judged on its facts and the relevant voir dire must be considered in its entirety. Absence of an independent examination by the trial court justifies a more searching review by an appellate court of the challenged juror's qualifications.

*Id.* at 65 (citation omitted).

In the present case, although venireperson Bird initially expressed reservations about her impartiality and her ability to apply the proper burden of proof to the facts, a careful consideration of the entire voir dire examination reveals that she demonstrated an ability to be fair and to follow the court's instructions. Upon examination by the prosecutor, venirewoman Bird stated that she would not disregard the law, that her feelings were not so strong as to make her believe a witness that she otherwise would not believe, and that she would confine her decision to the facts of the present case. We note additionally that the court participated in the interrogation of Ms. Bird. *Johnson*, 722 S.W.2d at 65. Defendant's point is without merit.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.