**STATE of Missouri, Plaintiff/Respondent,**

v.

**Lee COULTER, Defendant/Appellant.**

**No. 64864.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 15, 1995.

Deborah B. Wafer, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Defendant, Lee Coulter, appeals from his conviction in the Circuit Court of Jefferson County of two counts of conspiracy to commit murder, one count of first degree assault and one count of armed criminal action. He was sentenced to life imprisonment plus thirty-three years. We affirm in part and reverse in part.

On May 29, 1992, between 9:30 and 10:00 p.m., Milton and June Chisum were at home watching television when the doorbell rang. June answered the door. Defendant, who was at the door, told her that he was there for a birthday party for her son, John Chisum. Although it was John's birthday, there was no party at the house. June told Defendant to wait at the door while she went to get Milton.

When Milton arrived at the door, defendant told Milton that he had been dropped off with no ride home. Milton allowed defendant inside to use the telephone. Defendant feigned a telephone conversation and then said that his mother would be unable to pick him up. June pressed the redial button on the phone and heard a recorded message that "there was no such number in service."

June offered to let defendant use the telephone again. Again defendant feigned a conversation, after which he said no one was available to pick him up. June again pressed the redial button and heard a recorded message that "there was no such number in service."

Milton offered to take defendant to a nearby service station so that he could try and find a ride. When they walked outside, Milton heard a voice that sounded as if it was coming from around the side of the house. Milton became uncomfortable and decided to return inside the house. When Milton turned to go inside, defendant stabbed him in the back with a hunting knife. The knife penetrated Milton's lung and missed his spinal cord by one centimeter. With the knife imbedded in his back, Milton yelled "June". Milton blacked out but managed to get to the front door. He "came to" standing with his back to the front door, facing defendant. June, who had reached the front door, saw a knife in her husband's back. June stepped between Milton and defendant. When she asked defendant why he had stabbed Milton, he responded "That's the way it is." The Chisums backed into their house together and between them shut and locked the door, leaving defendant outside. June summoned a neighbor who called the police. Milton survived the attack.

The attack on Milton was the result of a plan by several people. In May, 1992, defendant, John Chisum, Tom Nutter, Harry Frost, and Jimmy Lee White discussed opening a "topless bar." The group, however, lacked the necessary venture capital to open such an enterprise. After discussing several financing options, John Chisum suggested that he would get a "lot of money if his parents were killed." Defendant was not present for all of the discussions. It is unclear whether or not defendant was to have an ownership interest in the business.

On the night of May 29, 1992, the group met at the Twin City Recreational Club, where John Chisum handed out assignments. Frost, Nutter and defendant were to go murder the Chisums, while John Chisum and White remained at the club to establish an alibi.

After his arrest and voluntary waiver of his *Miranda* rights, defendant admitted that he had stabbed Milton Chisum.

Defendant was charged and convicted of one count of conspiracy to commit the murder of Milton Chisum, one count of conspiracy to commit the murder of June Chisum, one count of first degree assault and one count of armed criminal action. This appeal followed.

Defendant contends that he was improperly convicted of two conspiracies. He further contends that he should not have been convicted of both a conspiracy and a substantive crime. The state partially concedes the point regarding the conviction for two conspiracies. We agree with defendant on both points.

■ Section 564.016.3 RSMo 1986 provides that "If a person conspires to commit a number of offenses, he is guilty of only one conspiracy so long as such multiple offenses are the object of the same agreement." The essence of the crime of conspiracy is in the agreement. Even though the agreement may, within its scope, include more than one criminal act in sequence, there is created but a single conspiracy. A defendant is protected by the statute limiting the state to a single conviction for his single agreement. *State v. Welty*, 729 S.W.2d 594, 598 (Mo.App. S.D.1987).

■ In the case before us, the conspiracy was to murder both June and Milton Chisum. There were not two separate conspiracies; one to murder June and one to murder Milton. The group made only one agreement: to murder both Milton and June Chisum in order to get their money. The objective of the conspiracy would have been unfulfilled by the murder of only one of the Chisums. The state improperly charged defendant with both conspiracies. Under § 564.016.3, the trial court committed error by allowing the conviction and sentencing for both of the conspiracies charged.

In conceding the point, the state urges this court to reverse the conviction for the conspiracy to murder Milton and affirm the conviction for the conspiracy to murder June. This would be the wrong result.

Section 564.016.7 RSMo 1986 provides that "A person may not be charged, convicted or sentenced on the basis of the same course of conduct of both the actual commission of an offense and a conspiracy to commit that offense." Section 564.016.7 was discussed at length in *State v. Cornman*, 695 S.W.2d 443, 448 (Mo. banc 1985):

> The Comment to 1973 Proposed Code, 40 V.A.M.S. p. 426, 433 succinctly explains that Sec. 564.016.7 is designed to prohibit the State only from convicting a person for conspiracy where there has been a conviction for the substantive offense which was the target of the conspiracy. Pertinent portions of the Comment are as follows:
>
> > Subsection 7 is based on Michigan Revised Code Sec. 1020(2) (Final Draft 1967). (FN4) It basically provides for the merger of the conspiracy into the conviction for the substantive offense that was the target of the conspiracy. Nothing in this subsection is designed to prohibit the state from charging both conspiracy and a substantive offense and proving both. It is [only] intended to prevent a person's being charged, convicted or sentenced for conspiracy when he has been charged, convicted or sentenced for the substantive offense which was the target of the conspiracy.

In *Cornman*, the defendant was convicted of conspiracy to commit murder and first-degree assault. The object of the conspiracy was to murder a man named Red Sims; the victim of the assault was a man named Davis Haas. *Id.* at 444–445. Because the crime was not in furtherance of the conspiracy to murder Sims, the Missouri Supreme Court allowed the conviction to stand. *Id.* at 448–449. In so doing, the court stated, "... the legislative intent to limit certain convictions and punishments under Subsection 7 of Sec. 564.016 is specifically circumscribed and applies only to that situation where a single or the same course of conduct is shown for both the actual commission of an offense and a conspiracy to commit that offense." *Id.* at 449.

■ The convictions and punishments which the court in *Cornman* stated were specifically circumscribed by § 564.016.7 oc-

curred in this case. Defendant was convicted of two conspiracies and two substantive crimes. Without question, the charge, conviction and sentence as to the conspiracy to murder Milton Chisum was based on the same course of conduct involved in the assault of Milton Chisum. Alternatively, the charge, conviction and sentence as to the conspiracy to murder June Chisum was also based on the same course of conduct involved in the assault of Milton Chisum. Assuming *arguendo,* that the state had properly charged defendant with the inchoate offense of conspiring to murder June and Milton Chisum, any such charge, conviction or sentence as to such a conspiracy would have been based on the same course of conduct involved in the assault of Milton Chisum. The conspiracy should have merged into the conviction for the substantive offenses of assault in the first degree and armed criminal action.

Accordingly, we reverse the convictions for both the conspiracy to murder Milton Chisum and the conspiracy to murder June Chisum.

Defendant also contends that the trial court erred in excluding evidence that John Chisum had made statements that defendant was not involved in the conspiracy to murder Milton Chisum. Due to our above holding reversing the convictions for both conspiracies, we need not address this issue.

Defendant's final point on appeal asserts that the trial court erred in overruling his motion to strike for cause Venire Person McCoy. We disagree.

During voir dire, defense counsel asked the venire if anyone felt at that point, before any evidence had been presented "they would have a hard time saying he's not guilty." McCoy responded that "he couldn't say yes or no." The defense motion to strike McCoy for cause was denied. Subsequently, defendant used a peremptory challenge to strike McCoy from the venire.

Section 494.480 RSMo Supp.1993 which had an effective date of August 28, 1993 states in pertinent part:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

■ As defendant concedes, the Missouri Supreme Court recently upheld the retrospective application of § 494.480.4 in *State v. Gray,* 887 S.W.2d 369, 383 (Mo. banc 1994) *cert. denied* — U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). In so holding, the court stated: "The new statute is procedural in nature and was effective prior to the appeal of this case. Application of the statute does not violate the prohibition against ex post facto laws." *Id.*

Despite the plain language to the contrary, defendant argues that the *Gray* court's reference to "ex post facto laws" did not include Article I, § 13 of the Missouri Constitution or the common law prohibition against retrospective laws. Article I, § 13 states "That no ex post facto law, nor law ... retrospective in its operation ... may be enacted."

Assuming *arguendo* that defendant is correct in his assertion that the Missouri Supreme Court overlooked the Missouri Constitution or the common law, his argument is without merit.

Defendant concedes in his brief that under the Missouri Constitution and the common law, legislation may be given retrospective application provided it is procedural. *Doe v. Roman Catholic Diocese,* 862 S.W.2d 338, 341 (Mo. banc 1993); *State ex rel. Saint Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974). Appellant then ignores that in *Gray* the court found § 494.480 to be procedural. 887 S.W.2d at 383. Because § 494.480 is procedural, it may be applied retrospectively. *Id.; State v. Duncan,* 879 S.W.2d 749, 752 (Mo.App.W.D. 1994); *State v. Wings,* 867 S.W.2d 607, 609 (Mo.App.E.D.1993); *State v. Simmons,* 865 S.W.2d 893, 894 (Mo.App.E.D.1993).

Accordingly, we hold that defendant's claim is barred by § 494.480 and it may be applied retrospectively without violating the

Missouri Constitution, the common law or ex post facto laws. Point denied.

We reverse the convictions for the conspiracy to murder Milton Chisum and the conspiracy to murder June Chisum. We affirm the conviction and sentencing for assault in the first degree and armed criminal action.

SMITH, P.J., and WHITE, J., concur.