STATE of Missouri, Respondent,

v.

David FITZPATRICK, Appellant.

No. WD 64399.

Missouri Court of Appeals,
Western District.

Feb. 28, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 2006.

Application for Transfer Denied
June 30, 2006.

Amy M. Bartholow, Columbia, MO, for appellant.

Heidi C. Doerhoff, Jefferson City, MO, for respondent.

Before LOWENSTEIN, P.J., ELLIS and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

David Fitzpatrick (Appellant) was convicted of one count of conspiracy to commit murder and was sentenced to fourteen years imprisonment.[1] His wife, Rebecca, was also charged with conspiracy, but was acquitted.[2] Appellant claims the trial court erred when it (1) allowed the State to amend the information five days before trial, (2) admitted recordings of conversations between Appellant and a cellmate, John Penn, (3) restricted defense counsel's cross examination of John Penn, (4) failed to declare a mistrial during the State's closing argument, and (5) instructed the jury using a disjunctive verdict director. This court affirms.

## FACTS

Appellant does not contest the sufficiency of the evidence. The facts viewed in a light most favorable to the guilty verdict are as follows: a confidential informant alerted a police detective that Appellant would be traveling to St. Joseph, Missouri, transporting drugs. After executing a search warrant of Appellant's hotel room, the Buchanan County Drug Strike Force discovered a large amount of marijuana. Appellant was arrested on December 7, 1999, and was charged with the class B felonies of possession of a controlled substance with intent to deliver and of delivery of a controlled substance. While Appellant awaited trial, he was jailed at Buchanan County jail where he met and befriended John Penn, who was awaiting trial for receiving stolen property. After Appellant and Penn began discussing Appellant's case, a plot emerged to murder two men who Appellant suspected were responsible for his drug arrest: Officer Terry Kelly,[3] an Atchison, Kansas, police officer, and Todd Reno, a private citizen (who did, in fact, confidentially inform law enforcement of Appellant's transport of drugs).

Several days after Penn's conversation with Appellant, Penn informed jail officials and law enforcement of Appellant's plot. During the course of two months, Penn cooperated with an investigation and reported his conversations with Appellant to law enforcement. Some conversations were recorded. These conversations and Penn's testimony formed the basis of the State's case against Appellant and his wife, Rebecca Fitzpatrick, for conspiracy to commit murder. The jury convicted Appellant and acquitted Rebecca. This appeal follows. Additional facts will be discussed as necessary.

1. "A person is guilty of conspiracy with another person ... to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person ... that they or one or more of them will engage in conduct which constitutes such offense." § 564.016.1, RSMo. (2000). "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020, RSMo. (2000). All statutory references are to RSMo 2000 unless otherwise indicated.

2. Appellant and Rebecca have since divorced.

3. Officer Kelly is also the brother of Appellant's brother's wife.

## I. AMENDMENT OF INFORMATION

The State filed its information on January 23, 2003, charging Appellant with the class B felony of conspiracy to commit the first-degree murder of Officer Terry Kelly. The State first named Todd Reno as a target of the conspiracy in its second-amended information filed on April 14, 2004.[4] A third-amended information also named Todd Reno as a victim, which was filed on April 22, 2004. Appellant filed a motion to quash the second-amended information or, alternatively, requested a preliminary hearing. The trial court overruled Appellant's motion to quash, denied his request for a preliminary hearing and allowed the State to amend the information to include Todd Reno as a victim on April 21, 2004. Appellant's trial began on April 26, 2004.

Appellant argues the trial court erred when it allowed the State to amend the information five days before trial began and when it denied Appellant's trial counsel's request for a continuance. Appellant specifically argues that by allowing such an amendment, the State alleged an alternative theory of prosecution, which constituted a new offense. Appellant claims he was prejudiced because he was denied an opportunity to depose or further depose additional witnesses, including Todd Reno, and explore other evidence in light of the amended information. Appellant further claims he was prejudiced because he was denied a preliminary hearing. Finally, Appellant claims prejudice because the State was precluded from adding Todd Reno as a potential victim because the statute of limitations to bring a conspiracy charge had expired.

### A. STANDARD OF REVIEW

▮▮▮▮ Allowing the State to amend an information or substitute an information in lieu of an indictment rests within the discretion of the trial court. *State v. Boone Ret. Ctr., Inc.,* 26 S.W.3d 265, 268 (Mo. App.2000). This court reviews for an abuse of discretion. *Id.* at 269. An information may be amended at any time before a verdict if no additional or different offense is charged *and* a defendant's substantial rights are not prejudiced. Rule 23.08; *State v. Messa,* 914 S.W.2d 53, 54 (Mo.App.1996). The test of prejudice is whether the planned defense to the original charge would still be available after the amendment, and whether the defendant's evidence would be applicable before and after the amendment. *Messa,* 914 S.W.2d at 54.

### B. ADDITIONAL OR DIFFERENT OFFENSE.

▮▮▮▮ Appellant was originally charged with conspiracy to commit the first-degree murder of Officer Kelly under section 564.016. Todd Reno was later added as an alternate victim of the conspiracy in the second- and third-amended informations. Appellant was similarly charged in these instruments under section 546.016. Section 564.016 states that "[a] person is guilty of conspiracy with another person . . . to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person . . . that they or one or more of them will engage in conduct which constitutes such offense."[5] The essence of the crime of conspiracy is the agreement. *State v. Coulter,* 904 S.W.2d 84, 86 (Mo.App.1995). Significantly, subsection three provides that "[i]f a person conspires to commit a

---

4. The State's first-amended information altered language of the original information that is not relevant to this appeal.

5. Section 565.020 states that "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter."

number of offenses, he is guilty of only one conspiracy so long as such multiple offenses are the object of the same agreement." § 564.016.

Appellant likens this case to *State ex rel. Buresh v. Adams*, 468 S.W.2d 18 (Mo. banc 1971), to argue that the amended information alleged an additional or different offense. In *Adams*, the State filed a *complaint* alleging two counts against the relator/defendant. 468 S.W.2d at 20. Count I alleged that the relator, as general manager, embezzled approximately $870 from his employer between July 1966 and October 1968. *Id.* Count II alleged that the relator stole electricity from his employer. *Id.* A preliminary hearing was held in which the magistrate discharged the relator on Count II, but bound him on Count I. *Id.* The prosecutor filed an amended *information*, alleging that between the years 1959 and 1969 the relator submitted false claims for travel expenses, had merchandise delivered to his home while billing his employer, directed the use of the employer's labor and services for relator's home, and used his employer's electricity for the relator's home use. *Id.* at 19–20. No preliminary hearing was held on this charge. *Id.* at 19. In holding that the relator was not accorded a preliminary hearing, the court found that the allegations charged in the information (for which there was no preliminary hearing) constituted an additional and different offense from those charged in the complaint (for which there was a preliminary hearing). *Id.* at 22. Specifically, the court stated that the allegations in the information "constitute ... a substantial departure from the scope" of the allegations stated in the complaint. *Id.*

The State encourages this court to follow *State v. Hutchinson*, 740 S.W.2d 184, 186 (Mo.App.1987), which held that the substitution of a victim's name in the information charging the defendant with rob-

bery did not constitute a new and different offense from that originally charged in the indictment. The State similarly likens the case at bar to *Boone Retirement Center*, 26 S.W.3d 265. In *Boone*, both charging instruments alleged a failure to supply two nursing home residents "services, items and supplies." *Id.* at 269. While the information did not contain such language, the original indictment modified those terms by the phrase "that were necessary to prevent and treat decubitus ulcers," which the appellant argued drastically broadened the scope of the charges and, thus, constituted a new offense. *Id.* This court rejected the appellants' argument and held that no new or different offense was charged. *Id.*

On the other hand, the Supreme Court held in *State v. Thompson*, 392 S.W.2d 617, 621 (Mo.1965), that amending the information to charge the offense of assault with malice constituted a different offense from the originally charged offense of attempted robbery. The Court noted that the offenses were ordered in entirely different classifications: robbery is classified as an "offense against property" while assault with malice is classified as an "offense against persons." *Id.* at 620.

This court holds that the second- and third-amended informations charged no additional or different offense from the original information. *Adams* is easily distinguishable. First, the scope of the allegations in *Adams* was vastly enhanced when the information increased the duration of the crime from two and a half years to almost ten years. Furthermore, the information charged one continuous scheme whereas the complaint did not. And, unlike *Thompson* in which the Supreme Court held the amendment introduced a new and distinct charge when two separate offenses defined in separate statutes were charged between the two charg-

ing instruments, this case involved only one charge under section 564.016. Additionally, Section 564.016.3 prevents this court from reaching a similar conclusion under the likes of *Thompson* and *Adams*.

■ This case bears more resemblance to the cases cited by the State. All versions of the charging instrument in this case charged Appellant with *one* count of conspiracy under section 564.016, unlike in *Thompson*. Assuming *arguendo* the amended informations listed the victims as "Officer Kelly *and* Todd Reno," Appellant could only have been found guilty of and sentenced to one count of conspiracy. *See Coulter*, 904 S.W.2d at 86. A victim is not a necessary element to the crime of the conspiracy. The addition of Todd Reno effected no change in the nature of the offense charged or the punishment inflicted upon conviction. *State v. Taylor*, 375 S.W.2d 58, 63 (Mo.1964). Therefore, the second- and third-amended informations charged no additional or different offense when it added Todd Reno as an alternate target of Appellant's conspiracy.

### C. PREJUDICE

■ Rule 23.08 commands both an additional or different offense and prejudice in order for a trial court to deny the prosecutor's amended information. *See also Thompson*, 392 S.W.2d at 620 (noting that Rule 24.02 (Rule 23.08's predecessor) "fixes two *conjunctive* requirements, namely, that no additional or different offense be charged *and* that substantial rights be not prejudiced").

The proper test of prejudice is whether the planned defense to the original charge would still be available after the amendment, and whether the defendant's evidence would be applicable before and after the amendment. *Taylor*, 375 S.W.2d at 63. Appellant claims he was prejudiced because he was denied an opportunity to depose or further depose additional witnesses; because he was denied a preliminary hearing; and because the statute of limitations to bring a conspiracy charge had expired. However, Appellant fails to show how he was prejudiced under the test defined in *Taylor* and its progeny. Appellant denied the existence of the conspiracy and, instead, offered his interpretation of the tape-recorded conversations involving Officer Kelly and Todd Reno. This defense was available both before and after the second-and third-amended informations. Therefore, the trial court did not abuse its discretion when it allowed the State to amend its information. Point denied.

### II. RECORDINGS

Appellant argues that allowing the State to admit recordings of conversations between Appellant and John Penn, a fellow inmate, violated his Fifth Amendment right against self-incrimination, his Sixth and Fourteenth Amendment right to counsel, and the corresponding Missouri constitutional provisions. Specifically, Appellant contends that the recordings violated his right to be free from custodial interrogation after he had invoked his *Miranda* rights. Furthermore, Appellant asserts that his Sixth Amendment right to counsel was violated when Appellant spoke with Penn, who was working for law enforcement, without the assistance of counsel because *de facto* adversarial proceedings had commenced when the State increased Appellant's bond and then charged him with a second identical drug charge. Review of the admissibility of evidence is for an abuse of discretion. *State v. Case*, 140 S.W.3d 80, 85 (Mo.App.2004). This court reviews *de novo* a trial court's determination on questions of law. *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000).

### A. FIFTH AMENDMENT RIGHTS

■ Appellant was incarcerated at the Buchanan County jail awaiting drug

charges when he began conversing with Penn about a plot to murder two witnesses who Appellant thought were involved in his drug case. Several days later, Penn informed jail officials and law enforcement of Appellant's plot. Thereafter, law enforcement arranged to have Penn wired to record his conversations with Appellant. On February 14, 2000, during that conversation, Appellant provided descriptions of Kelly and Reno. Other incriminating conversations between Appellant and Penn were recorded over the next two months. Penn testified that he and Appellant discussed how the "hit man" would carry out the murders, how much the murders would cost, and Appellant's plan to be in Texas at the time of the murders so that he had an alibi.

Appellant was not given *Miranda* warnings prior to these discussions with Penn. Appellant was given *Miranda* warnings when he was first interrogated regarding the drug charges in December 1999. Both Appellant and the State agree that Appellant invoked his right to silence; but the State disputes Appellant's contention that he invoked his Fifth Amendment right to counsel. However, invocation of Fifth Amendment rights to silence or counsel is not germane here, as the analysis below demonstrates.

Appellant invites this court to follow the Missouri case of *State v. Perkins,* 753 S.W.2d 567 (Mo.App.1988), which held that the use of a recorded conversation obtained after defendant invoked his *Miranda* rights and by the defendant's brother's cooperation with police while the defendant was incarcerated was barred by *Miranda v. Arizona.* In any event, this case can be distinguished from *State v. Perkins.* In concluding that the informant, who was the defendant's brother collecting a $10,000 reward from the police for information relating to the murder in

which the defendant was later charged, was a government agent, the Eastern District stated "[the brother's] interests were so integrated and closely aligned with the police that his role in that case was adversarial in nature and his conduct and questions directed at appellant were accusatory in character." *Id.* at 573. That simply was not the case here. Penn was working together with Appellant to plot to murder two witnesses. He was not paid any reward by law enforcement and the nature of Penn's questioning was not adversarial. Appellant and Penn spoke as neighbors, partners, friends. Moreover, some conversations took place in the day room, an area where the prisoners congregate to watch television, play cards, and converse. This environment is far from the coercive environment that concerned *Miranda.*

■ The United States Supreme Court case of *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), is on point. *Illinois v. Perkins* held that "an undercover law enforcement officer posing as a fellow inmate need not give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response. The statements at issue in [*Illinois v. Perkins* ] were voluntary, and there is no federal obstacle to their admissibility at trial." *Id.* at 300, 110 S.Ct. 2394. Conversations between suspects and undercover agents do not implicate the concerns basic to *Miranda. Id.* at 296, 110 S.Ct. 2394. The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. *Id.* Therefore, under *Illinois v. Perkins,* whether or not Appellant invoked *Miranda* rights is irrelevant to this analysis.

Appellant argues that *Illinois v. Perkins* is distinguishable in two respects. First,

Appellant argues that *Illinois v. Perkins* is inapplicable because it involved an initial interrogation, and not a reinitiation as the case at bar involved. Second, Appellant contends that *Illinois v. Perkins* does not apply because the defendant there did not invoke any *Miranda* rights at the time of the jailhouse interrogation, unlike Appellant did here. However, as the United States Supreme Court said, *Miranda* is not implicated with respect to undercover law enforcement posing as inmates because law enforcement's use of a confidential informant did not amount to "custodial interrogation." *See id.* at 296, 110 S.Ct. 2394. It follows, therefore, that both of Appellant's distinctions that rely on *Miranda* are irrelevant to determining whether the jailhouse conversations should be excluded for want of *Miranda* warnings. Appellant's Fifth Amendment rights were not violated, and, thus, the trial court did not abuse its discretion by admitting the recordings.

**B. Sixth Amendment Right to Counsel**

Appellant also argues that his Sixth Amendment right to counsel was violated. He contends that an adversarial judicial proceeding was initiated against him when the State increased Appellant's bond and charged him with a second drug charge so that Appellant would remain in jail and the State could arrange the recorded conversations. Appellant's argument fails.

Attachment of the Sixth Amendment right to counsel occurs at the initiation of adversarial judicial proceedings against an accused "by way of formal charge, preliminary hearing, indictment, information or arraignment." *State v. Beck*, 687 S.W.2d 155, 160 (Mo. banc 1985). The Sixth Amendment right to counsel is offense specific. *State v. Parker*, 886 S.W.2d 908, 918 (Mo. banc 1994). It can-

not be invoked for future prosecutions. *Id.*

Appellant was arrested for felony drug charges on December 7, 1999, and was charged by information for possession of a controlled substance with intent to deliver and delivery of a controlled substance. Appellant's recorded conversations with Penn relating to the conspiracy took place in February and March of 2000. Sometime in February 2000, the State brought another charge of possession of a controlled substance against Appellant so the State could raise the bond in an effort to keep Appellant in jail so that the investigation of his conspiracy could continue with Penn. Appellant was not charged with conspiracy to commit murder until January 23, 2003. Because the Sixth Amendment right to counsel is offense specific and the indictment for conspiracy came nearly three years *after* Appellant's conversations with Penn, Appellant's Sixth Amendment right to counsel was not violated. Consequently, the trial court did not abuse its discretion when it admitted the recordings. Point denied.

**III. Cross-examination of the State's Witness**

Appellant argues that his constitutional right to confront a witness and present a defense was violated when the trial court restricted his cross-examination of John Penn's bias and motive to testify favorably for the State. Specifically, Appellant argues error occurred when the trial judge prohibited questions relating to Penn's bond level and stolen checks, credit cards, and bonds. Penn's answers to such questions, Appellant contends, would allow the jury to decide whether Penn was cooperating with the State in order to receive a reduction in his bond level and to decide whether Penn expected leniency from prosecutors on other potential stolen

goods. Appellant also contends the trial court erred when it deprived Appellant from asking his witness, Darren Holt, an inmate at the Buchanan County jail while Appellant and Penn were also jailed, whether Penn had told Holt about fictitious money in a storage shed in Kansas City and whether Penn had told Holt about money in the storage shed. Appellant claims that this question would enable defense counsel to demonstrate that Penn's *modus operandi* in the cellblock was to tempt a fellow cellmate with fictitious bonds and then eventually obtain information against the cellmate, which he would later provide to the State in exchange for leniency.

At the time Appellant spoke with Penn about murdering Kelly and Reno, Penn was in jail on state charges of possessing stolen property. As part of the events leading to this charge, Penn had engaged law enforcement in a high-speed chase. When he was caught, Penn was driving a stolen Ford Expedition, and 22 checkbooks, 84 credit cards, and 145 pieces of mail were found in the vehicle. Penn ultimately pled guilty to possession of stolen property (for possessing a stolen Ford Expedition). However, the charges against Penn for receiving stolen property for the checkbooks and credit cards and the various traffic violations resulting from the chase were dismissed. Penn also faced federal mail fraud charges for the same conduct and was ultimately convicted in 2002 for the federal offense of possession of stolen mail.

The trial court allowed defense counsel to inquire as to the pending federal charges:

[DEFENSE COUNSEL]: Because of your involvement in this case, you had hoped that federal charges against you for mail fraud would not be brought?

[JOHN PENN]: I hoped so, but not because of the cooperation.

[DEFENSE COUNSEL]: Well, that was your hope, wasn't it?

[JOHN PENN]: Oh, yes, it was certainly my hope.

[DEFENSE COUNSEL]: That because you cooperated, they would be nice and not charge you federally?

[JOHN PENN]: Right.

[DEFENSE COUNSEL]: But they did, in fact, do that anyway?

[JOHN PENN]: Yes.

[DEFENSE COUNSEL]: And that's why you're serving time now?

[JOHN PENN]: Yes.

The trial court also permitted Appellant's defense counsel to ask:

[DEFENSE COUNSEL]: Mr. Penn, I'm going to refer to articles that were found in the stolen vehicle when you were arrested on November the 17th, 1999, here in Buchanan County, Missouri. Okay?

[JOHN PENN]: Okay.

[DEFENSE COUNSEL]: And isn't it true that you were of the mind that the plea bargain offered to you in that case by the State of Missouri included those articles of mail found in the vehicle that you were prosecuted for in Buchanan County, Missouri?

[JOHN PENN]: No.

[DEFENSE COUNSEL]: That's not correct?

[JOHN PENN]: No, that's not correct.

Essentially, Appellant argues that he should have been allowed to ask Penn about a letter that Penn had filed in his state stolen property case, which provided that the spirit of his plea agreement with Missouri prosecutors included the charges related to the checkbooks and credit cards found in the vehicle. Implicit, therefore, is

that Penn was not charged with the stolen property charges relating to the checkbooks and credit cards as a result of testifying against Appellant. The trial judge refused defense counsel's request to impeach Penn's answer with the letter.

▓▓▓▓ Trial courts have broad discretion to admit or exclude evidence at trial. *State v. Carruth,* 166 S.W.3d 589, 590 (Mo. App.2005). This court reviews for a clear abuse of discretion and will reverse only upon a showing of prejudicial error. *Id.* Generally, a witness' credibility may not be attacked by showing his arrest and a pending charge that has not resulted in a conviction. *State v. Lockhart,* 507 S.W.2d 395, 396 (Mo.1974). However, this rule has three exceptions: (1) where the inquiry shows a specific interest of the witness; (2) where it shows a possible motivation of the witness to testify favorably for the government; or (3) where it shows the testimony of the government witness was given in expectation of leniency. *Id.*

▓▓▓▓ Here, Appellant fails to demonstrate prejudice. Appellant's defense counsel asked Penn on cross-examination whether he "hoped that federal charges on which [he was] serving now wouldn't have been brought," to which Penn admitted "it was certainly my hope." The jury heard of Penn's potential bias. Appellant sought to further discredit Penn's testimony by showing additional motive after the jury already heard that Penn hoped that cooperation might encourage the federal authorities in overlooking the federal charges. Appellant's defense counsel was permitted to inquire of the articles of mail found in the vehicle. The right of cross-examination is not unlimited. *State v.*

*Hicklin,* 969 S.W.2d 303, 307 (Mo.App. 1998). Cross-examination is subject to the broad discretion of the trial court to preclude repetitive and unduly harassing interrogations. *Id.* "Generally, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Id.*

Appellant's other subpoints regarding the bond limits and Darren Holt's testimony face preservation problems.[6] In any event, in light of the trial court's broad discretion to admit evidence, Appellant's arguments are meritless, and he failed to demonstrate prejudice. Point denied.

## IV. PROSECUTOR'S CLOSING ARGUMENT

▓▓▓ Appellant contends that the trial court erred when it refused to declare a mistrial after the prosecutor offered her personal opinion on Appellant's guilt during closing argument. The prosecutor stated, "I know the gravity of your decision because I had to make it first." Defense counsel objected, contending that the comment implied personal knowledge and requested a mistrial. The trial judge denied Appellant's motion to grant a mistrial. Instead, the trial court admonished the jury to disregard the prosecutor's comment and struck the comment from the record.

▓▓▓▓ The decision to grant or deny a mistrial is within the sound discretion of the trial court. *State v. Jones,* 921 S.W.2d 28, 32 (Mo.App.1996). Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant can-

---

**6.** This court notes that Appellant's subpoint regarding Darren Holt was not presented in his point relied on. Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"); *State v. Dewey,* 86 S.W.3d 434, 441 n. 1 (Mo.App.2002). Appellant's subpoint relating to the bond level variations was not preserved in his motion for new trial. *See State v. Cummings,* 445 S.W.2d 639, 641 (Mo.1969).

not be removed any other way. *Id.* at 31–32. The trial court is in the better position to determine the prejudicial effect, if any, of the incident precipitating the request. *Id.* at 32. This court reviews the trial court's refusal to declare a mistrial only for abuse of discretion. *Id.*

■■■■ A prosecutor may not express personal knowledge of the facts in issue. *Bucklew v. State,* 38 S.W.3d 395, 400 (Mo. banc 2001). The Supreme Court held an almost identical statement did not constitute reversible error. *See State v. Black,* 50 S.W.3d 778, 791 (Mo. banc 2001) ("I realize the magnitude of the decision that you have to make, because I had to make it first."). Here, as in *Black,* the prosecutor's comment did not imply any sort of special knowledge, but rather made a "rhetorical argument based on the evidence." *Id.* Appellant attempts to distinguish *Black* because the comments complained of in that case occurred during the sentencing phase of the trial, rather than the guilt phase. However, the rules relating to closing arguments apply equally to the guilt and sentencing phases. *Compare Black,* 50 S.W.3d at 791, *with State v. Copeland,* 928 S.W.2d 828, 841 (Mo. banc 1996). The trial court did not abuse its discretion when it did not grant Appellant's request for a mistrial. Point denied.

### V. JURY INSTRUCTION—UNANIMITY OF VERDICT

Appellant argues that the trial court erred when it instructed the jury in the disjunctive form because such an instruction deprived Appellant of due process, a fair trial, and a unanimous verdict when sufficient evidence did not support such an instruction. Distilled to its essence, this point alleges trial error by the use of "or" between the names of the alleged victims ("Officer Terry Kelly or Todd Reno") and that this instructional error allowed some jurors to find a conspiracy against Kelly and some as to Reno. Instruction No. 6 that was submitted to the jury stated in relevant part:

If you find and believe from the evidence beyond a reasonable doubt:

First, that at some point or times between January 31, 2000 and March 11, 2000, in the County of Buchanan, State of Missouri, the defendants agreed with John Penn that one or more of them would engage in conduct consisting of the offense of murder of Officer Terry W. Kelly or Todd Reno, and (emphasis added)

Second, that defendants so agreed with the purpose of facilitating that offense, and

Third, that in furtherance of that agreement David Fitzpatrick or Becky Fitzpatrick thereafter engaged in one or more of the following acts:

A. Becky Fitzpatrick went to the storage facility believed to contain items of monetary value to bond John Penn out of jail.

B. David Fitzpatrick made a telephone call to purchase a bus ticket for John Penn in furtherance of the conspiracy to murder Officer Terry Kelly or Todd Reno.

C. Becky Fitzpatrick came to Buchanan County, Missouri in furtherance of the conspiracy to murder Officer Terry W. Kelly or Todd Reno.

D. David Fitzpatrick phoned John Penn to make arrangements in furtherance of the conspiracy to murder Officer Terry W. Kelly or Todd Reno.

E. David Fitzpatrick drew John Penn a map to David Fitzpatrick's house so John Penn could hide after the murder of Officer Terry W. Kelly or Todd Reno

then you will find the defendants guilty of conspiracy to commit murder in the first degree.

The jury returned a verdict, finding Appellant guilty of conspiracy to commit murder. The State claims that Appellant failed to preserve this issue at trial, and, because Appellant failed to demonstrate plain error, this court is precluded from reviewing this point. The State goes on to address the substance of Appellant's argument in a footnote.

Supreme Court Rule 28.03 requires a party to specifically object at trial to instructions considered to be erroneous before the jury retires to consider its verdict. Rule 28.03 further requires a party to "stat[e] distinctly the matter objected to and the grounds of the objection." These objections must also be raised in the motion for new trial.

■ At the instruction conference, Appellant's trial counsel objected, stating, "We would also object to submitting of the alleged victim or in the alternative Todd Reno. Again, that objection, we feel that to instruct or submit two alleged victims in the alternative is improper." In his motion for new trial, Appellant restated his objections to Instruction No. 6, although with more specificity, declaring the trial court's errors as they appear in his appellate brief. The trial court was not made aware during the instruction conference that the listing the victims disjunctively in the instruction posed a concern for non-unanimity. Instead, Appellant's trial counsel described the instruction as "improper." Such a general objection at the instruction conference is not sufficient to preserve the issue for appeal. *See State v. Brisco*, 934 S.W.2d 335, 337 (Mo.App.1996). *See also State v. Potter*, 711 S.W.2d 539, 542 (Mo.App.1986); *State v. Martin*, 620 S.W.2d 54, 55 (Mo.App.1981).

■ Because the objection to the jury instruction was not properly pre-served, this court can only review for plain error. Rule 30.20; *State v. Bradshaw*, 26 S.W.3d 461, 471 (Mo.App.2000). "This [c]ourt will find plain error where the alleged error 'facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice occurred.'" *State v. Baker*, 103 S.W.3d 711, 723 (Mo. banc 2003) (citation omitted). To establish that the instruction constitutes plain error, Appellant must show that the trial court misdirected or failed to instruct the jury and that it is evident that the instructional error affected the jury's verdict. *Id.* This court does not believe that the instructional error in this case rises to such a level.

■ A disjunctive submission of alternative means by which a single crime is committed is proper if both alternatives are supported by sufficient evidence and the alternative means are in the same "conceptual grouping." *State v. Brigham*, 709 S.W.2d 917, 922 (Mo.App.1986). Alternative victims do not fall into two conceptual groupings. *United States v. McGuire*, 744 F.2d 1197, 1202 (6th cir.1984). Furthermore, the jury need only be unanimous as to the ultimate issue of guilt or innocence, and need not be unanimous as to the means by which the crime was committed. *State v. Thompson*, 112 S.W.3d 57, 66 (Mo.App.2003). Because the evidence at trial established that a conspiracy existed to murder Officer Kelly and a conspiracy to murder Todd Reno, no manifest injustice occurred. Point denied.

### CONCLUSION

Having found that no reversible error in the proceedings below, the judgment is affirmed.

All concur.