THE STATE v. THEODORE WASHINGTON, Appellant.

**Division Two, May 9, 1912.**

1. **GRAND JURY: Impaneled Before Arrest: Negro: Discrimination.** A defendant not under arrest nor held to answer a criminal charge when the grand jury which found the indictment against him was impaneled, is precluded under the statute (Secs. 5067 and 5068, R. S. 1909) from attacking the indictment on the ground of the incompetency of a grand juror, or because of any irregularity in the manner of selecting the grand jury; and, hence, a defendant not under arrest nor held to answer a criminal charge when the grand jury was impaneled, cannot have the indictment against him quashed on the ground that he is a negro and the jury commissioner did not summon any person of his race to sit on the grand jury.

2. **INDICTMENT: Motion to Quash: Not Preserved in Record.** An assignment of error based on the action of the court in overruling appellant's motion to quash the indictment will not be considered on appeal if such motion is not preserved in the record.

3. **INSTRUCTION: Reasonable Doubt: In Every Instruction.** If a proper instruction on the subject of reasonable doubt is given, it is not necessary that the other instructions given should repeat that essential requirement.

4. **INSTRUCTION: Different Acts Charged: General Verdict.** A verdict must be definite and certain as to the crime of which the accused is found guilty. The defendant is entitled to the unanimous verdict upon the issue of his guilt or innocence of the particular offense for which he was tried. Where the indictment charged that the defendant did "set up and keep

242 Sup.—26

divers gaming tables and gambling devices, to-wit, one crap table, and one poker table," and there was testimony tending to prove the setting up and keeping of both gambling devices as charged, an instruction telling the jury that if they found defendant did "set up and keep certain gaming tables and gambling devices, to-wit, a crap table . . . and a poker table . . . or either of them . . . then you will find the defendant guilty as charged," was error, and a verdict simply finding "the defendant guilty as charged in the indictment" cannot stand. Under the instruction and the general verdict returned some of the jurors may have believed the testimony in support of the charge as to one of the gambling devices and disbelieved the testimony as to the other, and the remaining jurors may have found and believed conversely, and a unanimous verdict as to either may never have been reached.

Appeal from St. Louis City Circuit Court.—*Hon. W. A. Taylor*, Judge.

REVERSED AND REMANDED.

*John A. Gernez* and *Thos. J. Rowe, Jr.*, for appellant.

(1) Plea in abatement should have been sustained, as the methods of the jury commission of the city of St. Louis are beyond the powers entrusted to him by the statutes. As a consequence, the grand jury that returned the indictment is an unlawful body, the defendant is deprived of his liberty without due process of law, has been denied the legal protection of the law and his privileges as a citizen have been abridged, violating the State and Federal Constitutions. (2) Instruction number 1 is erroneous, as it left out the element of "reasonable doubt" in the jury's consideration of the evidence and in their finding of a verdict. It cannot be cured by a subsequent instruction; and even if it could, it has not been. State v. Helton, 137 S. W. 988. (3) Where an indictment in one count charges more than one offense, a general verdict finding the defendant guilty, without specifying of which offense, is insufficient to support a judgment of conviction.

State v. Burke, 151 Mo. 136; State v. Grossman, 214 Mo. 233; State v. Rowe, 142 Mo. 439; State v. Jones, 168 Mo. 398; State v. McCune, 209 Mo. 399; State v. Logan, 209 Mo. 401.

*Thos. B. Harvey* also for appellant.

(1) The trial court's general instruction defining the offense was erroneous. It authorized the jury to convict if they should find that defendants had set up and permitted gambling upon either or both of the alleged devices within three years. The prosecution offered evidence tending to show that gambling had been permitted on both the poker and the crap table; and if some of the jurors found that gambling had occurred on one table, and the balance of the jurors had found that gambling had occurred on the other table, this instruction would authorize a conviction under such circumstances. In other words, the jury need not be unanimous as to either table. Such, of course, would not be sufficient. There must be unanimity of the jury that defendants had set up and permitted gambling on a certain device. (2) The indictment identified the criminal transaction by naming the players and the date; but the instruction authorized a conviction if any one, though not named in the indictment, had been permitted to gamble within three years before the finding of the indictment. Time is not of the essence of this offense and need not be proved as laid; but if that means of identification is abandoned, so much the greater the necessity of identifying the particular occurrence for which the grand jury had indicted, by the players whom they alleged had participated. (a) Whenever the crime alleged against a defendant is based upon a transaction between him and another, or upon an act of the defendant against another, then it is necessary to name that other person. The pleader recognized this fundamental rule of pro-

cedure and alleged the names; but the instruction told the jury that the allegations were sustained if any person had been permitted to play. The fact that the indictment alleged that others who played on the occasion were "unknown," would not dispense with proof of at least one or more of those who were named. State v. Miner, 233 Mo. 331. (b) But even if it was not necessary to allege the names of the players, yet being alleged, the allegation could not be rejected as surplusage; for it is the chief element of the offense that the keeper of the device should permit persons to gamble by means thereof, and therefore it was material and necessary to allege that persons played, and any naming of those persons became a material averment because descriptive of that which was material. State v. Samuels, 144 Mo. 72; State v. Harris, 209 Mo. 436. (3) The instruction should have confined the attention of the jury to one of the devices alleged in the indictment, or should have required them to state in their verdict of which device they convicted him.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Appellant alleges in his motion to quash that the grand jury that returned the indictment was composed of persons of the Caucasian race; that appellant is of African descent, a citizen of Missouri and of the United States; that the indictment was returned in the circuit court of the city of St. Louis, and that about ten per cent of the population of the city of St. Louis are negroes and many of them qualified in law by their intelligence and standing in the community, to perform grand jury duties, and the fact that persons of the Caucasian race composed said grand jury was not the result of inadvertence and accident, but was done purposely and intentionally. The summoning and impaneling of jurors are directory only. State

v. Jennings, 98 Mo. 493; State v. Mathews, 88 Mo. 121; State v. Gleason, 88 Mo. 582; State v. Pitts, 58 Mo. 556. The record shows that the list of grand jurymen was selected in the usual way. State v. Jackson, 167 Mo. 291; R. S. 1909, secs. 7341, 7342. Section 5068, Revised Statutes 1909, provides that no challenge to the array of grand jurors, or to any person summoned as a grand juror except for those causes mentioned in section 5067. This court has held that the only disqualifications that can be urged are those enumerated in this section. State v. Crane, 202 Mo. 54. There is no showing in the record that any grand juror was excluded because he was a negro, or for any other reason. The grand jury was regularly impaneled and sworn and was a legal grand jury. State v. Glasscock, 232 Mo. 278. (2) That a certain house or other place was maintained or kept as a gaming house, may be shown by proof of its general reputation in the community, by the reputation of its inmates and frequenters as professional gamblers, and by the fact that gambling paraphernalia was found there. Underhill on Crim. Ev. (2 Ed.), sec. 475, p. 774; State v. Mosby, 53 Mo. App. 571. (3) Appellant contends that the verdict is indefinite and uncertain and, consequently, void, stating that the indictment charges more than one offense, and that the verdict is a general one. If appellant's contention were true, then his argument might be possible, but the fact remains that the indictment is only in one count, charged upon one section of the statute, and has been held many times by this court to constitute but one offense. State v. Hall, 228 Mo. 456; State v. Cannon, 232 Mo. 205; State v. Mathis, 206 Mo. 604; R. S. 1909, sec. 4750; State v. Baldwin, 214 Mo. 306; State v. Bluhely, 184 Mo. 187.

KENNISH, J.—At the October term, 1910, of the circuit court of the city of St. Louis, an indictment was returned against appellant and Ollie Jackson,

charging them with having set up and kept divers gaming tables and gambling devices. Appellant was granted a severance, and at the February term, 1911, of said court, was tried, convicted and sentenced to imprisonment in the penitentiary for a term of two years. He appealed to this court.

The State introduced evidence tending to show the following facts:

The building designated as number 2309 Chestnut street in the city of St. Louis, a three-story brick building, had been occupied for several years by the Modern Horseshoe Club. On the first floor there was a reception hall, parlor, barroom and buffet, all elaborately furnished. In the basement, which was reached by a stairway at the rear of the barroom, was a large room in which there were two pool tables. A poker game was operated regularly in the barroom, and a crap game in the basement, the pool tables being used as crap tables. Both games were played for money by the frequenters of the rooms. They were not "bank" games, but were games in which the players made the wagers with each other. There was a man in charge of each game, however, who collected from the players a "take-off" for "the house." At each of the crap tables the man in charge of the game, at the time each bet was made, would take out of the money wagered five cents or more according to the amount of the bet. When the crap games were running, the defendant frequently went to the pool tables, counted the money taken in by the man in charge and took part of the money upstairs with him. This frequently happened several times the same night. He also played at the poker tables, and in one instance took charge of the "kitty" that belonged to "the house" and carried it away from the poker table. When the games were in progress the defendant was in constant attendance around the premises, watching the games and preserv-

ing order.  A witness who had previously been em-
ployed at the club as a bartender testified that the de-
fendant was the manager of the club and sometimes
paid the witness his wages.

The defendant testified in his own behalf as fol-
lows:

He was employed by the Modern Horseshoe Club
and received a regular salary for his services.  His
duties were to ascertain whether or not people enter-
ing the building were members of the club, see that
members coming into the rooms were seated and
served, attend to the books and records and look after
the interests of the club.  He had no connection with
the gambling games, had no control over them nor any-
thing whatever to do with them and never received
any profit or benefit from them.  He never went to the
basement room for money except to have bills changed
in order to make change for a customer at the bar.  The
defendant's own testimony was the only evidence of-
fered by him.

I.  Appellant filed two motions to quash the in-
dictment, each of which was in turn overruled, and
error is assigned to such action of the court upon each
motion.

The first motion assailed the indictment upon the
ground that the grand jury which returned it was an
unlawful body in that the jury commissioner, in the
selection of the grand jury, discriminated against the
defendant, a negro, by not summoning any person of
his race to serve on that body.  It appears from the
facts recited in the motion that appellant was not un-
der arrest nor "held to answer a criminal charge"
when the grand jury which found the indictment was
impaneled.  By the provisions of section 5067, Revised
Statutes 1909, "any person held to answer a criminal
charge" may object to the competency of a
grand juror upon any of the grounds in said sec-

tion stated.    The next succeeding section provides that: ''No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other cases than such as are specified in the last section.''   These statutes, as construed by this court, preclude the right of an indictee, not held to anwer a charge when the grand jury was impaneled, to attack the indictment on the ground of the incompetency of a grand juror, or because of any irregularity in the manner of selecting the grand jury. This question has been so fully considered in the decisions of this court, some of them recent, that further discussion would not be profitable.    The ruling of the court was in accord with these precedents. [State v. Bleekley, 18 Mo. 428; State v. Crane, 202 Mo. 54; State v. Sartino, 216 Mo. 408; State v. Claybaugh, 220 Mo. 15; State v. Glasscock, 232 Mo. 278.]

The second motion to quash was based on the grounds (1) that the indictment was uncertain, vague and indefinite, and (2) on the ground of duplicity in charging two separate and distinct offenses in one count.   This motion is not preserved in the record, and therefore the assignment of error founded thereon cannot be considered.   [State v. Glasscock, 232 Mo. l. c. 291, and cases cited.]

II.   Error is assigned to the giving of instruction numbered 1 by the court of its own motion, in that it did not require the jury to find the incriminatory facts by evidence showing guilt beyond a reasonable doubt. The reasonable doubt requirement, an essential to the conviction of crime, was not included in the instruction under review, but that question of law was fully covered by instruction numbered 5, and it is settled that if a proper instruction upon the subject of reasonable doubt is given, it is not necessary that it should be repeated in each instruction.   [State v. Coleman, 186 Mo. 151; State v. Layton, 191 Mo. 613.]

Upon another ground this instruction contains er-
ror which will necessitate a retrial of this case.   The
indictment charged that the defendant did ''set up
and keep divers gaming tables and gambling devices,
to-wit, one crap table, commonly so called, and one
poker table, commonly so called,'' etc., etc.   There was
testimony, though of different witnesses, tending to
prove the setting up and keeping of each gambling
device as charged.   The instruction under review told
the jury that if they found from the evidence that the
defendant did ''set up and keep certain gaming tables
and gambling devices, to-wit, a crap table   . . .   and
a poker table   . . .   or either of them   . . .   then
you will find the defendant guilty as charged,'' etc.,
etc.   The verdict was: ''We, the jury in the above en-
titled cause, find the defendant guilty as charged in the
indictment, and assess the punishment at two years in
the penitentiary.''   In directing the jury that they
should return a verdict of guilty if they found
that the defendant set up and kept both or either of
the gaming devices charged, the court erred.   The de-
fendant was entitled to a unanimous verdict of the jury
upon the issue of his guilt or innocence of the partic-
ular offense for which he was on trial.   Under this in-
struction and the general verdict returned, some of the
jurors may have believed the testimony in support of
the charge as to one of the gaming devices and disbe-
lieved the testimony as to the other, while the remain-
ing members of the jury may have found and believed
conversely.

It is well established law that the verdict must be
definite and certain as to the crime of which the ac-
cused is found guilty.   If the instruction had submitted
the case upon the theory of guilt as to both gambling
devices (no motion to quash or elect having been filed),
or as to one of such devices, specifically designating
it, the conviction could have been sustained.   But in

the form in which the instruction was given it cannot be determined from the record whether the defendant was convicted of setting up and keeping both tables described or of only one, and if the latter, then which óne. For these reasons, under the decisions of this court, the instruction was clearly erroneous. [State v. Schenk, 238 Mo. 429; State v. Standley, 232 Mo. 23; State v. Pierce, 136 Mo. 34; State v. Pruitt, 202 Mo. 49; State v. Palmberg, 199 Mo. 233.]

Notwithstanding the strong evidence of the defendant's guilt, because of error in the instruction, the judgment must be reversed and the cause remanded. It is so ordered. *Ferriss, P. J.,* and *Brown, J.,* concur.