STATE of Missouri,
Plaintiff-Respondent,

v.

Carl LOWERY, Defendant-Appellant.

No. 10281.

Missouri Court of Appeals,
Springfield District.

March 24, 1978.

Motion for Rehearing or Transfer
Denied April 21, 1978.

Application to Transfer Denied
June 15, 1978.

Charles E. Buchanan, Asst. Public Defender, Joplin, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before HOGAN, P. J., and MOORE and NORTHERN, Special Judges.

WELDON W. MOORE, Special Judge.

Defendant Carl Lowery was charged in the Circuit Court of Jasper County with first degree robbery under § 560.120, RSMo 1969, in that on or about September 2, 1975, he "did wilfully, unlawfully and feloniously take a .357 Magnum Smith & Wesson pistol and Twenty-Eight Dollars, lawful money of the United States from the person of Paul M. James in his presence and against his will by putting him in fear of some immediate injury to the person of the said Paul M. James." Defendant was convicted of the charge by a jury and sentenced to life imprisonment under the Second Offender Act, § 556.280, RSMo 1969.

On September 2, 1975, seven prisoners who had received treatment at a medical clinic in Webb City were being returned to the Jasper County Jail in a van driven by Deputy Sheriff Paul James. Deputy Sheriff Vernon Elder was unarmed and was riding in the van with the prisoners. Among the prisoners in the van were the defendant Lowery and one David Russell. Defendant and Russell were sitting on a bench-like seat directly behind Deputy James, with Russell seated closer to James who was carrying a .357 Magnum revolver in a waist holster. The van slowed to stop at the intersection of Highways HH and 71. At that moment defendant and Russell stood up simultaneously and turned toward Deputy James. Russell unsnapped the holster on James' hip and removed the revolver. Deputy Elder jumped Lowery but in just a few seconds Russell shoved the revolver in his stomach and ordered Deputy Elder to leave Lowery alone. Deputy Elder described the incident as happening fast and as Russell pulled the revolver from the holster, Deputy James brought his right arm back to try to grab it but Russell had already taken the revolver out. Deputy James fell out of his seat "pawing for the gun." Deputy James struggled or tried to wrestle with Russell for a short period and

682

wound up face down on the van in the back. The keys were removed from the ignition and the handcuffs were removed from the prisoners. Deputy James was handcuffed with his arms behind his back. Defendant acquired the revolver from Russell and Russell became the driver of the van. Later defendant pointed the revolver at the head of Deputy James and said, "How do you like that, you son-of-a-bitch"?

Russell drove the van through Joplin to a vacant house in Jasper County near the Kansas line. Both deputies were taken into the house. Deputy James was placed in a hall closet. Deputy Elder was handcuffed to a bathroom sink and the door was closed. Defendant and Russell took Deputy James from the closet and forced him to face the wall. James' wallet containing $28.00 was removed from his back pocket. Only defendant and Russell were near James when his wallet and money were taken. James stated that he could not see who had done the taking but that the defendant had the .357 Magnum at that time and was pointing it at him. James stated he was in fear of harm at the time his wallet was taken. James was ordered back into the closet and the door was shut; the defendant and Russell escaped in the van.

Defendant testified that he decided to join in the escape only after Russell grabbed the gun; that he took possession of the gun from Russell to keep someone from getting hurt; that neither he nor Russell took the wallet from James and that another prisoner did. Defendant denied making the threatening statement to James.

The issues on appeal involve Instruction No. 6 (based on MAI–CR Nos. 2.12 and 7.60). The instruction is as follows:

INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 2nd day of September, 1975, in the County of Jasper, State of Missouri, Paul M. James had in his possession a .357 Magnum S & W pistol and $28.00; lawful money of the United States, and

Second, that at that time and place David Russell took the property from Paul M. James against his will by violence to his person and by causing him to fear immediate injury to his person, and

Third, that David Russell took the property with the intent to permanently deprive Paul M. James of the property and to convert it or any part of it to the use of David Russell, and

Fourth, that the defendant acted either alone or knowingly and with common purpose together with David Russell in the conduct referred to in the above paragraphs,

then you will find the defendant guilty of robbery in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

MAI–CR 2.12 and 7.60

Defendant raises two issues on appeal. First, he contends that the court erred in submitting Instruction No. 6 because it erroneously states the law by directing the jury with respect to robberies of two different items of property that occurred at two separate times.

Paragraph First of Instruction No. 6 required the jury to find, in order to convict, that a .357 Magnum revolver and $28.00 were in possession of Deputy James on September 2, 1975. Paragraph Second required the jury to find that Russell had taken the property from James by violence and by putting him in fear. Paragraph Third required a finding that Russell took the property with intent to permanently deprive James of it. Paragraph Fourth required a finding that defendant acted alone or knowingly and with common purpose together with Russell in the conduct referred to in the above paragraphs (First, Second and Third). Defendant says that since the taking of the $28.00 occurred later in the day and at a different time and place than the taking of the .357 Magnum, the instruction erroneously stated the law and allowed

the jury to match some of the required elements of the offense from the first taking of property with other and different required elements of the offense from the second taking of property, thus rendering the jury able to return a guilty verdict without unanimity with respect to each taking.

The State contends Instruction No. 6 placed a heavier burden of proof on the State than the law required. The Instruction did not allow the jury to convict defendant by finding that defendant had taken *either* the revolver *or* the $28.00 from Paul M. James, but required the jury to find, to render a guilty verdict, that defendant had taken the revolver and $28.00 from James. Therefore, defendant benefited from the instruction and may not complain of its submission.

Defendant cites and relies heavily on *State v. Washington,* 242 Mo. 401, 146 S.W. 1164 (1912). There the indictment charged that defendant did "set up and keep divers gaming tables and gambling devices, to-wit, one crap table, commonly so called, and one poker table, commonly so called . . ." Evidence at the trial tended to prove each act and defendant was convicted. The instruction in question directed the jury to find defendant guilty if it found that defendant did "set up and keep certain gaming tables and gambling devices, to-wit, a crap table . . . and a poker table . . . *or either of them* . . ." (Emphasis added). *Washington, supra,* at 1166. The Court held that submission of the instruction was reversible error because some of the jurors may have believed the testimony in support of the charge as to one of the gaming devices and disbelieved the testimony as to the other, while the remaining members of the jury may have found and believed conversely. The court declared that "[I]f the instruction had submitted the case upon the theory of guilt as to both gambling devices (no motions to quash or elect having been filed) . . . the conviction could have been sustained." *Washington, supra,* at 1166. Instruction No. 6 in the present appeal required that guilt be predicated on both takings.

Defendant also cites a companion case to *Washington* (*State v. Jackson,* 242 Mo. 410, 146 S.W. 1166 (1912)), which adds nothing to *Washington.* In addition, he cites *State v. Frazier,* 217 Mo.App. 524, 269 S.W. 410 (1925) and *City of Mexico v. Gray,* 203 Mo.App. 547, 219 S.W. 707 (1920). Neither of these cases seem to be in point. *Gray* involved a complaint in two counts. In *Frazier,* defendant had been charged and convicted of possession of "a certain doubler, worm, fermenting tub, mash tub and still," in violation of the prohibition law. The instruction permitted conviction on a finding that defendant had possessed *either* of the named articles. *Frazier* was reversed based on an expressly disjunctive submission and is not applicable here.

In *State v. Daegele,* 302 S.W.2d 20 (Mo. 1957), defendant was convicted of molesting a female minor. The facts indicated that defendant committed two distinct acts of molestation at two separate times. The instruction submitted these acts in the conjunctive. Defendant alleged error on this basis. The court stated that the State merely assumed an added burden by the conjunctive submission and the instruction was not misleading and found no error.

*State v. Anglin,* 222 S.W. 776 (Mo.1920), also involved the use of a conjunctive submission. Defendant was convicted on a submission that required the jury to find that defendant "did wrongfully take and carry away $100.00 lawful money of the United States and one diamond ring . . ." *Anglin, supra,* at 777. The evidence indicated that larceny had been committed with respect to the diamond ring only. The court held that the instruction merely placed an added burden on the State and its submission did not constitute reversible error.

 The effect of Instruction No. 6 was to submit the offense of robbery in the form of a conjunctive submission, placing a burden on the State beyond that which is legally required. This requirement benefited the defendant and under Rule 26.06(1) a defendant may not complain of trial error

committed in his favor. This rule applies to criminal jury instructions which operate to defendant's advantage. *State v. Tolias,* 326 S.W.2d 329, 335[13] (Mo.1959). In *State v. Cusumano,* 372 S.W.2d 860 (Mo.1963) at page 865, the court stated that the use of conjunctive submission is harmless error unless it constitutes an improper statement of the law and a positive misdirection. The instruction in the instant case required the jury to find that both the gun and the $28.00 had been taken by Russell under circumstances constituting first degree robbery. The last clause of Instruction No. 6 directs the jury to find defendant not guilty if it did not find and believe from the evidence beyond a reasonable doubt *each* and *all* of the foregoing. (Emphasis added).

The "property" mentioned in paragraph Second of Instruction No. 6 referred to both the .357 Magnum revolver and $28.00 mentioned in paragraph First of the instruction. The instruction was in the nature of a conjunctive submission.

We hold that Instruction No. 6 is neither an improper statement of the law nor a positive misdirection and its use was not prejudicial to defendant.

The second issue involving Instruction No. 6 is: Was there sufficient evidence that defendant or David Russell took the .357 Magnum by violence to the person or by causing fear of immediate injury to the person to authorize submission of Instruction No. 6?

First degree robbery is defined as the felonious "taking [of] the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person." § 560.120, RSMo 1969.

■ It is not our function or prerogative to weigh the evidence to determine whether an offense has been proven beyond a reasonable doubt. That is a jury determination. *State v. Sherrill,* 496 S.W.2d 321 (Mo. App.1973).

■ The Missouri Supreme Court in *State v. Reed,* 453 S.W.2d 946 (Mo.1970),

established our standard of review on the question of sufficiency of the evidence: ". . . In determining the sufficiency of the evidence in a criminal case after a verdict of guilty, the court accepts as true all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial or direct in nature, together with all favorable inferences that can reasonably be drawn therefrom and disregards all contrary evidence and inferences." We are required to view the whole evidence in a light most favorable to the State. *State v. Bayless,* 362 Mo. 109, 240 S.W.2d 114 (1951).

■ The evidence when reviewed in the light most favorable to the State makes a submissible case of robbery in the first degree. The evidence was that Deputy James was first aware of what was going on when his holster was touched; he reached back to grab the holster and fell out of the seat; a struggle ensued for a few seconds and Deputy James wound up in the back of the van face down and Russell retained possession of the .357 Magnum. Defendant was asked: "Would you describe for the jury what happened to you when Mr. Russell jumped up to grab the gun"? Defendant answered: "When he jumped up and got the gun, I was still down on the floor and then Paul James was trying to wrestle with him, then I got back and tried to sit down, then Sonny Elders jumped on me and then Russell grabbed, put the gun in his stomach and told him to get back and leave me alone." Defendant shortly thereafter acquired the pistol from Russell and at one point cocked the gun, pointed it at James and said, "How do you like that, you son-of-a-bitch"?

At what point was the taking of the .357 Magnum complete? The taking was not complete until James and Elder were subdued and the struggle ended.

In *State v. Wilborn,* 525 S.W.2d 87 (Mo. App.1975), defendant contended he did not use force or violence when he took property from a gasoline service station. Evidence showed that defendant's accomplice was discovered ransacking some cabinets in a

back room by the service station attendant. The accomplice already had in his pockets money taken from the station's money drawer, and the attendant scuffled with the accomplice to prevent the accomplice from shooting him. The defendant entered the back room and helped subdue the attendant by placing garden shears at the back of the attendant's neck, and defendant and his accomplice drove away with the money. On appeal defendant contended that since the possession of the money (and other property) was already in the possession of his accomplice when he placed the shears to the attendant's neck, the money was taken by stealth and not by putting the victim in fear as is required for a robbery first degree conviction. The court equated this fact situation with cases involving "snatching with force" and held that defendant's use of intimidation or force was sufficiently *contemporaneous* with the taking of the money to constitute robbery first degree.

In *Wilborn,* the court declared:

". . . [t]he transaction constituting a robbery was completed only when appellant entered and threatened [the attendant] with serious bodily injury by use of the shears. In other words, under the factual situation of this case, the force or threat of serious bodily injury made by appellant was contemporaneous with the taking and a part of the single transaction." Id. at 91.

The court further stated that the accomplice did not have full control of the money when discovered by the attendant, and that complete control of the money was accomplished only after the force and fear were inflicted on the attendant by defendant through use of the shears. The court quoted with approval from *State v. Clemons,* 356 Mo. 514, 202 S.W.2d 75, 78 (1947):

"[I]t is generally held that when the sudden taking or snatching is *concurrent with intimidation* or *violence the crime is robbery.*" (Emphasis supplied by the court). 525 S.W.2d at 91.

*State v. Adams,* 406 S.W.2d 608 (Mo.1966) is an example of a "snatch" case.

We hold that the taking of James' gun was not complete and Russell did not have control of the gun until the struggle for the gun between James and Russell ended with Russell in possession of it. Russell's taking of the gun and the resulting struggle were a part of a single transaction of acts which originated and occurred contemporaneously.

The evidence presented was sufficient to submit a case of robbery first degree based on the taking of the .357 Magnum from Deputy James and the giving of Instruction No. 6 was not prejudicial error.

No prejudicial error appearing, we affirm.

All of the Judges concur.